**Iver BOGEN, Patsy Reed High, Rudolph Johnson, and Danna R. Friedman, Appellants,**

v.

**Gary DOTY, Deidre Dodge, William J. Kron, A. Lloyd Shannon, Edwin H. Hoff, Ronald R. Dicklich, Alvin S. Hall, comprising the County Board of the County of St. Louis, Minnesota, Appellees.**

No. 78–1692.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1979.

Decided May 7, 1979.

Newton S. Friedman of Friedman & Nord, Duluth, Minn. (argued), and Larry M. Nord, Duluth, Minn., on brief, for appellants.

Michael R. Dean, Asst. County Atty., Duluth, Minn. (argued) and Keith M. Brownell, St. Louis County Atty., Duluth, Minn., on brief, for appellees.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and HANSON, Senior District Judge.*

GIBSON, Chief Judge.

It is contended in this case that a resolution of the County Board of St. Louis County, Minnesota, providing for an opening invocation at its public meetings, is a law "respecting the establishment of religion" in violation of the first amendment.[1] The resolution in question provides that each county board meeting shall be preceded by a prayer given by an invited local clergyman. The District Court[2] held that no first amendment violation is involved and granted summary judgment against the plaintiffs who had sought to enjoin the practice. We affirm.

The cause was submitted to the District Court on cross-motions for summary judgment and on an agreed statement of facts.

---

* The Honorable William C. Hanson, Senior United States District Judge, Southern District of Iowa, sitting by designation.

1. The first amendment provides:

   Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

   The first amendment was made applicable to the states by the fourteenth amendment. *Everson v. Board of Education,* 330 U.S. 1, 8, 67 S.Ct. 504, 91 L.Ed. 711 (1947). The plaintiffs also rely on Article I, Section 16 of the Minnesota Constitution; they do not allege that it provides greater protection than the first amendment. Article I, Section 16 of the Minnesota Constitution states:

   The enumeration of rights in the constitution shall not deny or impair others retained by and inherent in the people. The right of every man to worship God according to the dictates of his own conscience shall never be infringed; nor shall any man be compelled to attend, erect or support any place of worship, or to maintain any religious or ecclesiastical ministry, against his consent; nor shall any control of or interference with the rights of conscience be permitted, or any preference be given by law to any religious establishment or mode of worship; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace or safety of the state, nor shall any money be drawn from the treasury for the benefit of any religious societies or religious or theological seminaries.

2. The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota.

The stipulated facts admitted all essential allegations in the complaint. The following facts were stipulated as true:

1. The Plaintiffs are citizens, residents, and voters of the County of St. Louis, State of Minnesota. They have been such prior to and during the pendency of this matter.

2. The Defendants are the publicly elected County Commissioners and comprise the Board of Commissioners of St. Louis County. They are paid salary and expenses from public funds. All meetings of the Board of Commissioners are held in public buildings and facilities in said County, the costs of which meetings are defrayed from public funds.

3. The subject matter of such meetings involved County and State business, including the use and expenditure of public funds.

4. On the 14th day of February, 1977, the Board of Commissioners instituted the policy and practice of inviting a local clergyman to give a prayer immediately prior to the[3] commencement of each Board meeting, and this has been done at each meeting thereafter. The Board of Commissioners intend to continue this practice. No additional costs for the appearance of such clergymen are incurred by the County.

5. The prayer is given in the particular County Board Chambers where that meeting is being held.

6. Basically, the prayer is announced by the Chairman of the Board who states:

"As is our practice, the Reverend John Doe will now give a prayer", at which time the Board members and some of those persons present stand for the prayer. There is no request made for those present to stand. Following the prayer, the roll of members is called and the meeting proceeds.

7. The Defendant Commissioners have no advance knowledge of the content of the prayers.

8. No clergymen have been invited to offer the prayer except those from Christian denominations.

9. County Board proceedings are recorded. The invocation or prayer is not recorded.

In a memorandum opinion and order dated September 8, 1978, the District Court reviewed several of the decisions of the Supreme Court touching on the establishment clause. However, it found no specific guidance in those cases or the Constitution. The District Court noted that Congress and the Minnesota Legislature have begun each of their sessions with an opening prayer for many years and that both the Pledge of Allegiance to the United States Flag and the opening call in federal courts include references to God. It concluded, on the basis of "history and custom," that the St. Louis County invocation did not pose a threat to the first amendment provisions, nor was it violative thereof.

In reviewing the District Court judgment we must limit ourselves to matters bearing on the constitutional issue. Political questions regarding the wisdom or expediency of the challenged practice are not before us. It is only in a limited sense that we can consider the propriety of the county board or employees expending time and energy selecting and inviting clergymen to give the invocation.

We have carefully considered the principal Supreme Court decisions relied on by the parties. *See Committee for Public Education v. Nyquist*, 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973) (New York programs of tax deductions and grants where children attended non-public schools held unconstitutional); *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (Pennsylvania and Rhode Island schemes aiding parochial schools struck down as involving excessive entanglement); *Walz v. Tax Commission*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) (exemption of church property from taxes upheld); *Ab-*

---

**3.** In the original record the word "formal" is interlineated at this point. Whether this was meant as an amendment of the stipulation is unclear. For constitutional purposes we are satisfied that the invocation must be viewed as part of the meeting it inaugurates.

ington School District v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (state-required readings of Bible verses at the start of each school day held unconstitutional); *Engel v. Vitale*, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962) (state-sanctioned official prayer opening each school day held unconstitutional); *Zorach v. Clausen*, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952) (practice of releasing students for periods of religious instruction upheld); *Everson v. Board of Education*, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947) (reimbursement of public transportation fares of both public and Catholic school students upheld).

■■ The Supreme Court in considering the issues of religious freedom and the establishment clause, has recognized a corridor where certain practices that affect religion in some manner, or carry a religious connotation, are permissible in some phases of our governmental operation. Thus recognition of religion is tolerated, but excessive entanglement between government and religion is impermissible. As noted by Chief Justice Burger in *Walz v. Tax Commission*, 397 U.S. at 674, 90 S.Ct. at 1414, on the issue of tax exemption for religious property and entities: "We must also be sure that the end result—the effect—is not an excessive government entanglement with religion. The test is inescapably one of degree." Thus where there is some peripheral effect or entanglement, it does appear to be a matter of degree. We must consider both the actual impact of the practice in modern society as well as the historical basis for the activity.

*Engel v. Vitale*, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962), involved activity somewhat comparable to that involved here. In it the State of New York published a prayer and directed that it be said daily in each public school classroom. The Court hold this was unconstitutional. The case could be distinguished from the present on the basis of the impressionability of school children or the involuntariness of school attendance. However, a close reading of the Court's opinion negates any such distinction. It is clear that the Supreme Court

was particularly influenced in *Engel v. Vitale* by the fact that the state had written a specific prayer and directed its recitation. The present case does not mirror that practice.

■ We hasten to add that we recognize that permitting clergymen to compose their own prayers for delivery at a government-sponsored gathering may result in a more sectarian influence than was the case in New York schools. Similarly, we are not persuaded that the fact that the clergymen in St. Louis County volunteer to give the invocations and are not paid is determinative for constitutional purposes. The volunteer presumably acts out of a commitment to his religious convictions and may be more zealous than a clergyman motivated in whole or in part by a desire to be retained on the government payroll.

■ The Supreme Court decisions to date have involved factual situations distinguishable from that in St. Louis County. However, taken together they suggest certain tests that can be applied in deciding whether an official act respects the establishment of religion. In *Committee for Public Education v. Nyquist*, the Supreme Court stated these tests:

> [T]he law in question, first must reflect a clearly secular legislative purpose, second, must have a primary effect that neither advances nor inhibits religion, and third, must avoid excessive government entanglement with religion.

413 U.S. at 773, 93 S.Ct. at 2965 (citations omitted). These tests were announced in a case involving church-related schools; however, they had previously been recognized and applied in *Walz v. Tax Commission*, 397 U.S. 664, 674, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970), which upheld tax exemptions for church property. Therefore, they are of general application and we will consider them here.

The challenged invocation practice reflects a clearly secular purpose. It is directed toward establishing a solemn atmosphere and serious tone for the board meetings. There is certainly nothing sinister in that

purpose. Nor can we say that a prayer will not advance that goal.

It is also essential that there be a primary effect of the activity that neither advances nor inhibits religion. It is no doubt true that some who hear the prayers will treat those moments as ones for religious reflection and thought. However, we are satisfied that a primary effect of this activity will simply be the accomplishment of the board's purpose of establishing order and a solemn tone for the meeting. Without meaning to appear cynical, we suggest that establishing solemnity is the primary effect of all invocations at gatherings of persons with differing views on religion.

The third necessity is that the activity avoid excessive government entanglement with religion. One aspect of entanglement is the divisive political potential of the program. *Lemon v. Kurtzman*, 403 U.S. 602, 662, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). The plaintiffs attempt to state this as a fourth test and urge that any potential for dividing people in the political arena along religious lines renders the action unconstitutional. The Supreme Court has simply not gone that far, but has considered political divisiveness as one element of entanglement. The present litigation and the earlier attempts to seek rescission of the practice demonstrate the political divisiveness of the invocations. We appreciate the convictions of those who feel that the prayers may impinge on their rights. The use of a public facility for a religious practice, the potential sectarian influence on public issues, and the stamp of apparent approval given to the religious groups represented, all are matters of legitimate concern to some citizens. However, we do not see this divisive potential as being of the same caliber as the annual appropriation of public funds anticipated but forbidden in *Lemon v. Kurtzman*. On the basis of the complaint and the stipulated facts we do not find an excessive entanglement of government and religion.

We would be less than candid if we did not warn the county of the quagmire it is near. Up to the time of oral argument, all persons delivering invocations were members of the Christian faith. We have no reason to believe that persons of any religious persuasions have volunteered and been turned down by the board. If in the future this should occur the board will be in a very difficult position to defend against an allegation that it is excessively entangled in religion by giving public approval to some groups while denying it to others.[4] We will not speculate on what, if any, criteria the county might permissibly use in selecting speakers; we only suggest that the process might prove more burdensome in time and money than is justified by the benefits.

We have been directed to and know of only one other case ruling on the constitutionality of invocations at similar governmental gatherings. *Lincoln v. Page*, 109 N.H. 30, 241 A.2d 799 (N.H.1968). In that case local ministers were invited to open town meetings with an invocation. The Supreme Court of New Hampshire found no prohibited establishment of religion. Both that case and the present one pose close questions in a highly controversial and sensitive area of human thought. However, historically it has been a common practice in legislative bodies, especially those with a paid chaplain, to present opening invocations and prayers. In proceedings to open this court there is reference to the deity; and again in official ceremonies for induction to office religious oaths are often used.[5] It is difficult to accept plaintiffs' view that these practices are merely ceremonial but that the St. Louis County invocations are substantive. Here the opening invocation does have a secular leg-

---

4. We do not mean to imply that a "federal case" is created by the subjective selection of a clergyman to give an invocation at a non-recurring function.

5. The framers of the Constitution were sensitive to the religious beliefs of all citizens. In writing the presidential oath they provided that it could be sworn or affirmed. U.S.Const. art. II, § 1 cl. 7. They omitted any reference to a deity.

islative purpose of setting a solemn tone for the transaction of governmental business and assists toward the maintenance of order and decorum. Its primary effect is for purposes other than advancing religion. *Abington School District v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). In the words of Chief Justice Kenison, in *Lincoln v. Page*, after noting that while one party might consider an invocation as purely ceremonial, another as a historical throwback to another day, and another as a religious practice which should be forbidden:

> But however any individual voter may describe the practice, it is not, on the facts of this case, an establishment of religion proscribed by the establishment clause of the First Amendment in any pragmatic, meaningful and realistic sense of that clause.

241 A.2d at 801. Here we are satisfied that on this record the county has not instituted a practice "respecting an establishment of religion," and summary judgment was proper.

Judgment affirmed.