675 F.2d 228
 Ernest CHAMBERS, Appellee,
v.
Frank MARSH, State Treasurer, and Robert E. Palmer, Chaplain
and Officer of the Nebraska Unicameral, Appellants.
Frank Lewis; John DeCamp; Robert L. Clark; Tom Fitzgerald;
Steve Fowler; Howard A. Lamb; Richard D. Marvel; Loran
Schmit and Jerome Warner, in their official capacity as
members of the Executive Board of the Legislative Council of
the Nebraska Unicameral.
Ernest CHAMBERS, Appellant,
v.
Frank MARSH, State Treasurer, and Robert E. Palmer, Chaplain
and Officer of the Nebraska Unicameral; Frank Lewis; John
DeCamp; Robert L. Clark; Tom Fitzgerald; Steve Fowler;
Howard A. Lamb; Richard D. Marvel; Loran Schmit and Jerome
Warner, in their official capacity as members of the
Executive Board of the Legislative Council of the Nebraska
Unicameral, Appellees.
 Nos. 81-1077, 81-1088.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 13, 1981.
Decided April 14, 1982.
 
 Stephen L. Pevar, American Civil Liberties Union, Denver, Colo., Herbert J. Friedman, Friedman Law Offices, Lincoln, Neb., for appellant/cross-appellee.
 Paul L. Douglas, Atty. Gen. of Nebraska, Shanler D. Cronk, Asst. Atty. Gen., Lincoln, Neb., for appellees/cross-appellants.
 Before HEANEY and STEPHENSON, Circuit Judges, and OLIVER,* Senior District Judge.
 HEANEY, Circuit Judge.
 
 
 1
 The Nebraska legislature compensates a chaplain to open each legislative session with a prayer and, from time to time, collects and publishes the prayers in book form. Ernest Chambers, a Nebraska legislator, challenges this practice as violating the Establishment Clause of the First Amendment. The district court[1] enjoined some elements of the practice and upheld others, from which both Chambers and the defendants[2] appeal. We affirm in part and reverse in part, and remand the matter for further action consistent with this opinion.
 
 
 2
 The essential facts are undisputed. Rule 1, sections 2 and 21, of the Rules of the Nebraska Unicameral provide that a chaplain shall be selected by the legislature through its Executive Board and that such chaplain shall attend and "open with prayer" each day of each session. Reverend Robert Palmer, an ordained Presbyterian clergyman, has been selected and has served as the sole legislative chaplain for every session since 1965. Chaplain Palmer is compensated out of general tax revenues at the rate of $320 per month for each month the legislature is in session. In 1975, 1978 and 1979, several hundred copies of prayer books were prepared and distributed pursuant to express legislative authorization, at a total cost to taxpayers of several hundred dollars. The books are comprised of the daily prayers offered in those years and have been distributed to both members and nonmembers of the legislature.
 
 
 3
 Senator Chambers is a taxpayer and citizen of Nebraska, as well as a duly elected member of the legislature. In 1979, he commenced a section 1983 action challenging the foregoing practice in its entirety-the compensation of the chaplain, the printing of the prayer books and the offering of daily prayers-arguing that the practice violates the Establishment Clause. The district court distinguished these three elements, ruling that compensation of the chaplain and financing of the prayer books are unconstitutional, but that offering daily prayers is not.
 
 A.
 
 4
 Before reaching the merits of this case, we must address the defendants' claims that the action is barred by the Tenth Amendment and by doctrines of standing, abstention and legislative immunity. We find no merit in any of these contentions.
 
 
 5
 The defendants argue that Nebraska's prayer practice is immune from federal judicial scrutiny under the Tenth Amendment, relying on National League of Cities v. Usury, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). National Cities, however, involved limits on congressional power to interfere, under the commerce clause, with certain essential state governmental functions.[3] Here, the issue is whether the First Amendment prohibits the Nebraska prayer practice, not whether Congress has interfered with state sovereignty.[4] Nothing in National Cities even hints that the Tenth Amendment immunizes state action from constitutional scrutiny. Indeed, if we adopted the defendants' position, the Tenth Amendment would shield state action from the entire Bill of Rights. We decline to do so.
 
 
 6
 The defendants next contend that Senator Chambers lacks standing, arguing that Chambers' taxpayer status is insufficient and that, under more general standing principles, he lacks any individualized injury that is different from the general grievance which any Nebraska citizen might assert. To support these contentions, the defendants attempt to separate the expenditure aspect of the chaplaincy from the prayers themselves, notwithstanding that defendants elsewhere argue the two elements cannot be treated separately. The defendants also attempt to construe the expenditure aspects as incidental administrative items that one lacks standing to challenge unless one is challenging a more general program of expenditures.
 
 
 7
 We think it is clear that Chambers has standing to assert his claim. The chaplain is selected and compensated for performing ostensibly one function-opening each legislative day with a prayer. Chambers challenges the formal legislative rule and established practice as a whole, not merely incidental elements of it. A taxpayer clearly has standing to challenge the expenditure foundation of such a practice because of the nexus between his taxpayer status and the Establishment Clause claim. See Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Murray v. Buchanan, --- F.2d ----, No. 81-1301 (D.C.Cir. Mar. 9, 1982) (taxpayer standing to challenge congressional chaplaincy); cf. Stone v. Graham, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980) (standing not even disputed). Moreover, Chambers properly asserts particularized injury in that, as a member of the legislature, he squarely confronts the prayer program on a daily basis.[5] We thus have no difficulty finding standing to assert the present claim.
 
 
 8
 The defendants also contend that the abstention doctrine precludes federal courts from entertaining the present action. We cannot agree. Abstention ordinarily involves deferring federal judicial action when ongoing state proceedings might obviate the need for federal relief. See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Under quite narrow circumstances, the Supreme Court has extended the comity basis of nonintervention to certain state-level executive branch functions. See Rizzo v. Goode, 423 U.S. 362, 379-380, 96 S.Ct. 598, 608, 46 L.Ed.2d 561 (1976).[6] Federalism principles, however, do not in any manner bar the present action. There have never been any state proceedings relative to the present action, much less are any proceedings presently outstanding. Nor is the challenged prayer practice an isolated incident unrelated to official state policy. The prayer practice has been followed with the same minister for over sixteen years and the record as a whole suggests that the practice will continue unless it is held violative of the First Amendment. The present action is thus a proper assertion of a federal claim in a federal court and is fully ripe for decision. See Zablocki v. Redhail, 434 U.S. 374, 380 n.5, 98 S.Ct. 673, 678 n.5, 54 L.Ed.2d 618 (1978) ("(t)here is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy").
 
 
 9
 The defendants finally contend that the prayer practice may not be challenged because it is subject to legislative immunity. Immunity for state legislators under section 1983 has been generally equated with the immunity accorded congressmen under the Speech and Debate Clause. See Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 731-733, 100 S.Ct. 1967, 1974-75, 64 L.Ed.2d 641 (1980). The defendants argue that the chaplain's prayers constitute immune speech and that virtually every act relating to the prayers-the rules requiring such prayers and the compensation paid therefor-are legislative acts immune from challenge. As the Supreme Court clarified in Gravel v. United States, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972):
 
 
 10
 Legislative acts are not all-encompassing. The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House. As the Court of Appeals put it, the courts have extended the privilege to matters beyond pure speech or debate in either House, but "only when necessary to prevent indirect impairment of such deliberations." (Citation omitted, emphasis added.)
 
 
 11
 Here, no speech activity by any legislator is at issue. Moreover, the deliberative process of the legislature will not be impaired to any degree by judicial resolution of the claim brought by Chambers. The prayer practice, as the district court found, bears no substantive relation to the process of enacting legislation. Nor is the independence of any individual legislator threatened by this action.[7] See United States v. Brewster, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972). Individual prayer by legislators is not at issue. We hold that legislative immunity does not bar an otherwise proper First Amendment challenge to the formal, established practice of the Nebraska legislature by which it compensates a chaplain to open each session with prayer.
 
 B.
 
 12
 The First Amendment, applicable to the states through the Fourteenth Amendment, requires that states "make no law respecting the establishment of religion." See Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). The defendants argue that the Nebraska prayer practice does not involve "making a law" for purposes of the Establishment Clause. The district court accepted this argument in part, hypothetically separating the prayer from the practice as a whole:
 
 
 13
 The legislature by majority vote invites a clergyman to give a prayer; neither the inviting nor the giving nor the hearing of the prayer is making a law. On this basis alone * * * the saying of prayers, per se, in the legislative halls at the opening session is not prohibited by the First and Fourteenth Amendments.
 
 
 14
 504 F.Supp. at 588.
 
 
 15
 The present action, however, does not focus on isolated utterances or invitations during legislative sessions and there is no reason to speculate whether prayer practices other than the one at issue here would constitute "law making" for purposes of the Establishment Clause. Here, the Nebraska legislature has adopted formal rules requiring the selection of a chaplain and the offering of prayer by such chaplain on each day of the legislative session. By express authorization, the chaplain is compensated for this service and, from time to time, the prayers are collected and published in book form. Such state sanctioned, sponsored and financed prayer activities certainly reflect sufficient "law making" to present a justiciable claim under the Establishment Clause. See, e.g., Bogen v. Doty, 598 F.2d 1110 (8th Cir. 1979) (informal rule); Voswinkel v. City of Charlotte, 495 F.Supp. 588 (W.D.N.C.1980) (employment contract).
 
 
 16
 We thus reach the substantive issue on its merits-does the Nebraska prayer practice violate the standard embodied in the Establishment Clause. The test for this inquiry is clear: the challenged state action must (1) serve a clearly secular purpose, (2) have a primary effect which neither advances nor inhibits religion, and (3) avoid excessive government entanglement with religion. Comm. for Public Education and Religious Liberty v. Nyquist, 413 U.S. 756, 773, 93 S.Ct. 2955, 2965, 37 L.Ed.2d 948 (1973).
 
 
 17
 In applying this test, the district court separated the actual prayers and chaplaincy from the compensation of the chaplain and the printing of the prayer books. Analyzing these elements independently, the court concluded that the chaplaincy and prayers are permissible, but that compensation of the chaplain and publication of the books are unconstitutional.
 
 
 18
 It might be proper to separate funding from the acts which are funded when, for example, the only disputed state involvement relates to funding.[8] Here, however, the legislative prayers are state sanctioned and, indeed, are required by formal rule. The funding is inextricably bound up with the prayers themselves. The principal function of the chaplain is to offer the daily prayers and he is compensated for performing this function. Parsing out these elements leads to what the defendants emphasized is an incongruous result: sanctioning a chaplain to offer prayers is deemed permissible but compensating him for doing so is not.
 
 
 19
 In our view, to assess whether the prayer practice has an impermissible purpose or effect, or whether it results in excessive entanglement, the established practice must be viewed as a whole. Whether the prayer practice crosses the line which separates church and state is not always easily discerned. As the Supreme Court has noted: "(t)he line of separation * * * is a blurred, indistinct and variable barrier depending on all the circumstances of a particular relationship." Lemon v. Kurtzman, 403 U.S. 602, 614, 91 S.Ct. 2105, 2112, 29 L.Ed.2d 745 (1971) (emphasis added). We, therefore, must analyze the various elements of Nebraska's practice as parts of a whole, not as independent unrelated actions. In so doing, we recognize that the present case falls within what might be labeled the "ceremonial prayer" category. Ceremonial recitals have a widespread role in many of our institutions: our presidents traditionally have taken their oath of office on a Bible, many federal courts open their sessions with a declaration that invokes the deity, and the federal congresses, both before and after adoption of the First Amendment, elected legislative chaplains who offered ceremonial prayers. See 1 Journals of the Continental Congress 26 (1774); 1 House J. 16,610, 1 Senate J. 12,452. Similarly, our coinage states "In God we Trust," which has been held not to violate the First Amendment. See Aronow v. United States, 432 F.2d 242 (9th Cir. 1970). None of this suggests that legislatures or other public bodies are free to promote religion while claiming to stand on ceremonial tradition. As has been noted by the Supreme Court: "While our institutions reflect a firm conviction that we are a religious people, those institutions by solemn constitutional injunction may not officially involve religion in such a way as to prefer, discriminate against, or oppress, a particular sect or religion." (Emphasis added.) Abington School Dist. v. Schempp, 374 U.S. 203, 231, 83 S.Ct. 1560, 1576, 10 L.Ed.2d 844 (1963) (Brennan, J., concurring).
 
 
 20
 In assessing whether Nebraska's practice transcends permissible bounds, we are guided by this Court's decision in Bogen v. Doty, supra. Bogen involved a county board's practice of opening each of its public meetings with a prayer offered by a local member of the clergy. This was a voluntary program. Representatives of various denominations were invited to give the prayer, none were compensated and no prayers were recorded or published. This Court upheld that practice, finding that it advanced a clearly secular purpose of "establishing a solemn atmosphere and serious tone for the board meetings." Id. at 1113. The only issue was the offering of invocations, standing alone, and the court suggested that "establishing solemnity is the primary effect of all invocations at gatherings of persons with differing views on religion." Id. at 1114. In also finding that the practice did not excessively entangle government and religion, the Bogen Court underscored that no public monies were expended and that there was no evidence the county had given preference to one religious denomination over another. Id. Denominational preference and use of public funds were thought to carry a serious potential for dividing persons in the political arena along religious lines, resulting in excessive entanglement between the government and religion. The Bogen Court, while upholding the practice as a whole, sternly warned the county "of the quagmire it is near." Id.
 
 
 21
 In our view, Nebraska has fallen into that quagmire with its legislative prayer practice. For sixteen years, the Nebraska legislature has selected and paid one minister, representing one denomination, to open each legislative session with prayer. The state has compensated the minister for offering such prayers. It has published his prayers for distribution to members and nonmembers of the legislature.
 
 
 22
 Such a practice violates all three elements of the constitutional test applicable here. The purpose of the practice as a whole must be to advance and give preference to one religious view over others. There is little other reason for singling out one minister of one denomination for such an extended period of time, and for further promoting that minister's religious expressions by publishing his prayers under state auspices.
 
 
 23
 The primary effect of the practice as a whole is unmistakably to advance religion and to give preference to one religious view. The state has placed its official seal of approval on one religious view for sixteen years and has stood behind that seal with its funds-both to compensate the minister and to publish his prayer books. There is no merit to defendants' claim that such acts are only internal to the legislature and have no effect on the public. The prayer books have been distributed to members and nonmembers of the legislature. Moreover, the legislative sessions clearly are public meetings at which the press and general public are ordinarily present. Those who have observed or participated in Nebraska's legislative process over the last sixteen years would have to conclude that the legislature has an official view on religion which is expressed by its minister and promoted with the use of state funds.
 
 
 24
 The prayer practice also entangles the state with religion in precisely the manner warned of in Bogen. By using state monies to compensate the same minister for sixteen years and to publish his prayer books, the state engenders serious political division along religious lines. The result is the type of excessive entanglement which must be avoided under the First Amendment.
 
 
 25
 We therefore hold that Nebraska's legislative prayer practice, taken as a whole, is unconstitutional as a violation of the Establishment Clause of the First Amendment. We do not hold that invocations alone are unconstitutional. Indeed, Bogen demonstrates that some invocation practices can be constitutionally conducted. Nor do we hold that a legislative chaplaincy, even a paid chaplaincy, is per se unconstitutional. We recognize that a paid chaplain might be assigned functions other than offering official prayers, functions that could be deemed proper in some contexts.[9] As indicated in Bogen v. Doty, supra, a chaplaincy program also might rely on volunteer members of the clergy and involve diverse theological representatives. The purpose and effect of such alternatives, however, must be examined in the light of a full record when they present an actual controversy. We cannot speculate on the constitutionality of practices that are not before us.
 
 
 26
 We decide only the questions presented here. We hold that the Nebraska legislature cannot continue to engage in its established practice by which a single minister is paid to offer legislative prayers and is retained as the exclusive source of such prayers over an extended period of time. The publishing of prayer books is similarly an impermissible part of such practice. The injunction entered below should be modified to reflect that the state is enjoined from engaging in the established practice by which it has operated the chaplaincy.
 
 
 27
 The only remaining issue involves attorneys' fees. The district court considered the plaintiff to be a partially prevailing party and awarded part of the fees requested by plaintiff's counsel. The court denied certain time and expense items that were deemed unnecessarily duplicative, which we cannot say was an abuse of discretion. The court also indicated, however, that in arriving at an overall fee, it took into account the fact that the plaintiff was only partially successful. Both the plaintiff and defendants construe this as meaning that the fee award was reduced from what it would have been had the plaintiff fully prevailed. Such a reduction appears improper under Brown v. Bathke, 588 F.2d 634, 638 (8th Cir. 1978), but we need not reach the issue of fee awards for partially prevailing parties. The plaintiff challenged the prayer practice as a whole and, under our holding, the state is enjoined from engaging in its present practice. The plaintiff is a fully prevailing party for purposes of a fee award. Thus, it would not be proper to reduce fees on the theory plaintiff prevailed only partially, and a new fee award should be made on remand. A determination of costs and fees on the appeal will be made upon proper motion.
 
 
 28
 The district court is affirmed in part and reversed in part and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable JOHN W. OLIVER, United States Senior District Judge for the Western District of Missouri, sitting by designation
 
 
 [1]
 The Honorable Warren K. Urbom, Chief Judge, United States District Court for Nebraska
 
 
 [2]
 The defendants are Frank Marsh, the state treasurer of Nebraska, who disburses funds for the chaplain and for printing of the prayer books; Reverend Palmer, the legislative chaplain; and the individual legislators who comprise the Executive Board which administers the chaplaincy program. The district court enjoined the treasurer from expending funds to compensate a chaplain or to print prayer books and enjoined the chaplain from accepting compensation. It dismissed the action against the legislators
 
 
 [3]
 It appears that the reasoning of National Cities is limited to congressional action under the commerce clause. See, e.g., State of New Hampshire v. Marshall, 616 F.2d 240 (1st Cir. 1980)
 
 
 [4]
 Because the present action was brought under section 1983, the defendants attempt to construe it as a federal statutory interference with state functions, as in National Cities. This view ignores the fact that section 1983 is essentially jurisdictional in the present context-the controlling substantive issue is whether the First Amendment bars the Nebraska practice. If it does, any resulting "interference" with the state action is mandated by the Constitution
 
 
 [5]
 Senator Chambers asserts a significant personal impact from the practice. As a non-Christian, he vigorously objects to commencing his legislative business with allegedly "official prayers." Legislative rules require attendance at every session, but Chambers has found some of the prayers so offensive to his values that he has excused himself on occasions during the prayers
 
 
 [6]
 Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), involved an alleged pattern of police misconduct. The Supreme Court deemed federal judicial intervention improper because it found the misconduct involved isolated incidents and was not the result of official state policy. Id. at 367-369, 96 S.Ct. at 602-03. Here, the alleged unconstitutional conduct is an ongoing practice pursuant to official, formal legislative policy
 
 
 [7]
 We note that the district court dismissed this action as to the legislator-defendants and enjoined only the state treasurer and the chaplain. Because we do not extend the injunction to any legislators, we need not address whether such relief would be barred by legislative immunity
 
 
 [8]
 E.g., Gilfillan v. City of Philadelphia, 637 F.2d 924 (3d Cir. 1980) (expenditure for construction of a speaker's platform for the Pope)
 
 
 [9]
 The plaintiff concedes that tax-paid chaplains have been upheld, for example, in the context of military bases, where the nature of the government service would restrict free exercise rights if a chaplain was not provided. It is at least conceivable that the same rationale might apply in some cases to legislative service. See Abington School Dist. v. Schempp, 374 U.S. 203, 296-299, 83 S.Ct. 1560, 1610-12, 10 L.Ed.2d 844 (1963) (Brennan, J., concurring)