**Tom SNYDER, Plaintiff,**

v.

**MURRAY CITY CORPORATION, a municipal corporation, and H. Craig Hall, City Attorney for Murray City Corporation, Defendants.**

No. 94–CV–667 G.

United States District Court,
D. Utah,
Central Division.

Sept. 13, 1995.

1446

Brian M. Barnard, John Pace and Joro Walker, Salt Lake City, for plaintiff.

Allan L. Larson and Richard A. Van Wagoner, Salt Lake City, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter is before the court on Defendants' Murray City Corporation ("Murray") and H. Craig Hall ("Hall") Motion for Summary Judgment and Plaintiff Tom Snyder's ("Snyder") Motion for Summary Judgment[1] and Motion for Partial Summary Judgment. Plaintiff is represented by Brian M. Barnard, John Pace, and Joro Walker. Defendants are represented by Allan L. Larson and Richard A. Van Wagoner. The United States has intervened to present an argument in regard to the constitutionality of the Religious Freedom Restoration Act.

All parties filed memorandums and supporting materials. The court determines that oral argument would not be of material

1. Plaintiff filed a motion for judgment on the pleadings which this court ruled should be regarded as a motion for summary judgment.

2. The text of the prayer is as follows:

"Our mother, who art in heaven (if, indeed there is a heaven and if there is a God that takes a woman's form) hallowed be thy name, we ask for thy blessing for and guidance of those that will participate in this meeting and for those mortals that govern the state of Utah;

"We fervently ask that you guide the leaders of this city, Salt Lake County and the state of Utah so that they may see the wisdom of separating church and state and so that they will never again perform demeaning religious ceremonies as part of official government functions;

"We pray that you prevent self-righteous politicians from mis-using the name of God in conducting government meetings; and, that you lead them away from the hypocritical and blasphemous deception of the public, attempting to make the people believe that bureaucrats' decisions and actions have thy stamp of approval if prayers are offered at the beginning of government meetings;

assistance in the resolution of this matter and will decide the motions on the basis of the extensive written materials which have been presented, and the files and records of this case.

## FACTUAL BACKGROUND

Since 1982, Murray City Council meetings have followed the tradition and practice of beginning with a short prayer in the opening "reverence portion" of the meeting in order to encourage lofty thoughts, pronounce blessings and set an inspirational tone for the balance of the meeting. The Murray City Council invites individuals representing a broad cross section of religious faiths to give these opening prayers.

After the opening prayer or message, there is an open "citizen comment" period in which any citizen has the opportunity to express his or her political views and comments on city practices and policies with no restriction as to content. Citizens may participate in this portion of the meeting without prior notice, or they may arrange prior to any council meeting to be formally scheduled on the meeting's agenda in order to express viewpoints.

On June 9, 1994, plaintiff sent a letter with a "prayer" enclosed[2], which was referred to

"We ask that you grant Utah's leaders and politicians enough courage and discernment to understand that religion is a private matter between every individual and his or her deity; we beseech thee to educate government leaders that religious beliefs should not be broadcast and revealed for the purpose of impressing others; we pray that you strike down those that misuse your name and those that cheapen the institution of prayer by using it for their own selfish political gains;

"We ask that the people of Utah will some day learn the wisdom of the separation of Church and State; we ask that you will teach the people of Utah that government should not participate in religion; we pray that you smite those government officials that would attempt to censor or control prayers made by anyone to you or to any other of our gods;

"We ask that you deliver us from the evil of forced religious worship now sought to be imposed upon the people of the state of Utah by the actions of misguided, weak and stupid politicians, who abuse power in their own self-righteousness;

"All of this we ask in thy name and in the name of thy son (if in fact you had a son that

Murray City Attorney Craig Hall with the request that plaintiff be allowed to present the statement as a prayer at the next city council meeting. On June 30, on behalf of Murray City, Mr. Hall sent a letter to plaintiff rejecting this statement as a "prayer" to be given in the opening portion of the meeting, but advising that it could be presented as an agenda item at the public comment portion of the meeting[3]. Plaintiff chose not to offer his statement or "prayer" during the public comment portion of any meeting, nor did he request to be put on the agenda. Instead, he filed this suit.

Plaintiff is familiar with the Utah Supreme Court decision in *Society of Separationists v. Whitehead*, 870 P.2d 916 (Utah 1993) and does not agree with the ruling of the Utah court in that case.[4] Defendants allege that plaintiff's "prayer" constitutes a response to that decision as well as a statement of plaintiff's political views on the separation of church and state and disparagement of persons and the practice of permitting prayers to be given at the opening of city council meetings.

### ANALYSIS

Plaintiff asserts seven causes of action: 1) Violation of 42 U.S.C. § 1983 based on the Free Exercise of Religion under the United States Constitution; 2) Violation of the Free Exercise of Religion under the Utah Constitution; 3) Violation of 42 U.S.C. § 1983 based on the Establishment Clause of the United States Constitution; 4) Violation of the Establishment Clause of the Utah Constitution; 5) Violation of 42 U.S.C. § 1983 based on the denial of Federal Due Process; 6) Denial of State Due Process; 7) Violation of the Religious Freedom Restoration Act. The claims asserted under the United States Constitution and the claims asserted under the Utah Constitution will be considered separately.

### I. CLAIMS UNDER THE UNITED STATES CONSTITUTION.

 Plaintiff brings his federal constitutional claims under authority of 42 U.S.C. § 1983 which permits suits against any

> person who, under color of statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the constitution ...

The Supreme Court has interpreted § 1983 to be applicable to municipalities. In *Monell v. New York City Dept. Of Soc. Serv.*, the Court held:

> Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief ...

436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). However, for purposes of Eleventh Amendment immunity, the court limited the scope of such actions to governmental units that are not part of the state for

---

visited earth) for the eternal betterment of all of us who populate the great state of Utah.
"Amen."

**3.** Mr. Hall wrote in the June 30 response letter:
"The Municipal Council has not established formal policies regarding the nature and/or content of this reverence portion of their agenda. However, the Council has established the policy that all council meetings will start with prayer.
"The purpose of the 'prayer' is to allow individuals that opportunity to express thoughts, leaves blessings, etc. It is not a time to express political views, attack city policies or practices or mock city practices or policies.
"Comments on present city practices or policies may be made at city council meetings by one of two methods; either by requesting to be

placed on the agenda, or taking up to three minutes during the 'citizen comment' portion of the meeting. The later method requires no prior arrangements to be made."

**4.** In *Whitehead*, the Utah Supreme Court held that the Salt Lake City Council's practice of allowing prayer to be given during the opening remarks portion of city council meetings did not violate the Utah Constitution's prohibitions against union of church and state.

Plaintiff proclaims his disagreement as follows: "I don't like public prayer. I don't think it is proper. I disagree with the Utah Supreme Court...." (Snyder Depo. at 84).

Eleventh Amendment analysis. *Id.* at 690 n. 54, 98 S.Ct. at 2035 n. 54. Recently, in *Hess v. Port Authority Trans–Hudson,* —— U.S. ——, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994), the Supreme Court declared that city and county governments do not enjoy Eleventh Amendment immunity.[5] In light of the *Hess* case, Murray City Corporation is not entitled to Eleventh Amendment immunity from plaintiff's § 1983 claims.

■ To prevail under any § 1983 claim, a plaintiff must establish that defendant(s) deprived her of a right, privilege, or immunity secured by the United States Constitution. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980).

## A. Free Exercise of Religion.

Plaintiff bases the first of his § 1983 claims on defendants' alleged violation of his constitutional right of free exercise of religion.[6] For the following reasons, plaintiff's claim fails as a matter of law.

### 1. Sincerity of Belief.

■ The threshold determination for a free exercise of religion claim to survive a dispositive motion is that the religious belief or practice in question is sincere and "truly held" by the party claiming injury.[7] In this regard, the Supreme Court stated in *United States v. Seeger,* 380 U.S. 163, 185, 85 S.Ct. 850, 863, 13 L.Ed.2d 733 (1965):

But we hasten to emphasize that while the 'truth' of a belief is not open to question, *there remains the significant question whether it is 'truly held'. This is the threshold question of sincerity which must be resolved in every case.*

(emphasis added). Thus, while it is not the province of this court to question the content of plaintiff's belief, it is the duty of this court to resolve the threshold question of the sincerity thereof and whether it is "truly held" as related to the "prayer" he desires to deliver.

■ Examination of the text of plaintiff's "prayer" provides a definitive perspective from which the determination of sincerity can be made. On its face, the so-called "prayer" to be offered by plaintiff presents an argument against the tradition of opening meetings with prayer as being akin to the "evil of forced religious worship," and sets forth political comment concerning city practices and policies which are disapproved by plaintiff, rather than sincere religious beliefs.[8] Plaintiff would use the "prayer" as a vehicle to air his views concerning the separation of church and state, and to disparage and "strike down" "misguided, weak and stupid" politicians and government officials who are caught up in the "evil of forced religious worship."[9] Moreover, Snyder's "prayer" does not reveal a truly held belief in deity in that it only conditionally addresses a "mother in heaven," i.e. ("if, indeed there is a heaven and if there is a God that takes a woman's form"), and closes conditionally in the name

5. The Tenth Circuit arrived at a similar conclusion as to school districts in *Ambus v. Granite Board of Education,* 995 F.2d 992 (10th Cir. 1993). The Utah Governmental Immunity Act defines a "political subdivision" as "any county, city, town, school district, ..., or other governmental subdivision or public corporation." Utah Code Ann. § 63–30–2(7). However, whether a state agency is entitled to Eleventh Amendment immunity is a matter of federal law. *Garcia v. Board of Educ. of Socorro Consol. Sch. Dist.,* 777 F.2d 1403 (10th Cir.1985), *cert. denied,* 479 U.S. 814, 107 S.Ct. 66, 93 L.Ed.2d 24 (1986).

6. The First Amendment states: "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof ..." This amendment applies to states through the Fourteenth Amendment under clearly established Supreme Court case law.

7. *See Frazee v. Illinois Department of Employment Security,* 489 U.S. 829, 109 S.Ct. 1514, 103 L.Ed.2d 914 (1989); *Thomas v. Review Board of the Indiana Employment Security Division,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *United States v. Seeger,* 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); *Society of Separationists v. Whitehead,* 870 P.2d 916 (Utah 1993).

8. Plaintiff admittedly is unsure of his religious beliefs, does not adhere to any particular church or group, does not profess any single faith, and has no definitive structure of religious views. Snyder Depo. at 14–15, 21–25.

9. *See supra* note 2.

of God's son, i.e. ("if in fact you had a son that visited earth.")

A "prayer", such as plaintiff's, that is not rooted in religion, that is conditional in expression, and that is devoid of truly held religious beliefs, is not afforded protection under the free exercise clause.[10] Furthermore, secular views do not qualify as protected speech under the free exercise clause. *Frazee v. Employment Security Department,* 489 U.S. 829, 833, 109 S.Ct. 1514, 1517, 103 L.Ed.2d 914 (1989) (citing *Seeger* and *Yoder*).[11]

This court determines that on the face of the "prayer" which plaintiff wants to offer, the threshold question of whether a sincerely held religious belief exists and is "truly held" must be answered in the negative.[12]

**10.** In *Thomas v. Review Board of the Indiana Employment Security Division,* 450 U.S. at 713–714, 101 S.Ct. at 1429–1430, the Supreme Court stated: "[o]nly beliefs rooted in religion are protected by the Free Exercise Clause, which, by its terms, gives special protection to the exercise of religion." In *Thomas,* the court held that denial of unemployment compensation to a member of Jehovah's Witnesses, who voluntarily quit his job because of his religious beliefs, was a violation of the free exercise clause of the first amendment. *Thomas* is distinguishable from the case at bar because Snyder claims he does not believe in prayer at city council meetings, but nevertheless wishes to present his prayer in the reverence portion of the council meeting.

**11.** In *Frazee,* the Supreme Court stated that "[p]urely secular views do not suffice (to warrant first amendment protection)." 489 U.S. at 833, 109 S.Ct. at 1517.

**12.** Both parties, as well as the State of Utah as intervenor, address the constitutionality of the Religious Freedom Restoration Act. However, in view of this court's conclusion that plaintiff's free exercise claim is not based on a sincere, "truly held" religious belief, the Murray City policy of providing for prayer only during the reverence portion of its meetings imposes no "substantial burden" on plaintiff's free exercise of religion rights. Moreover, he was given the option of expression during other portions of the council meeting. Accordingly, the court does not reach the constitutional challenge of the Religious Freedom Restoration Act which plaintiff asserts in the wake of *Dept. of Human Resources v. Smith.* The Alaskan Supreme Court questioned the constitutionality of RFRA in *Swanner v. Anchorage Equal Rights Commission, et al.,* 874 P.2d 274, 280 n. 9 (1994), but the U.S.

## 2. Restrictions on the Offering of Prayer and Religious Speech at Public Meetings.

There is an additional reason for determining that plaintiff's "prayer" does not constitute the legitimate free exercise of religion under the United States Constitution. Free exercise of religion does not excuse compliance with an otherwise valid regulation of conduct. *Employment Division, Department of Human Resources v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990).[13] Defendants' regulation of the offering of prayers at council meetings requires that such be given during the "reverence portion" at the opening of the meeting, and that such embody lofty thoughts, such as blessings, as distinguished from the expression of political views. This court considers the regulation to be reasonable and that it

Supreme Court declined the opportunity to review this question. *Swanner v. Anchorage Equal Rights Commission, et al.,* —— U.S. ——, 115 S.Ct. 460, 130 L.Ed.2d 368 (1994). The interesting problem of whether Congress can constitutionally establish an evidentiary standard of "compelling interest" despite the Supreme Court's ruling in *Smith,* which approved of neutral governmental regulations which create no "substantial burden" on religion, must await another day.

**13.** In *Smith,* the plaintiffs were fired by a drug rehabilitation organization because they ingested peyote, a hallucinogenic drug, for sacramental purposes at a ceremony in a Native American Church. The Supreme Court held that an Oregon Statute prohibiting the knowing or intentional possession of a "controlled substance" did not violate the free exercise of religion clause of the First Amendment. The Court said:

> We have never held that an individual's religion beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate. On the contrary, the record of more than a century of our free exercise jurisprudence contradicts that proposition … 'Conscientious scruples have not, in the course of the long struggle for religious toleration, relieved the individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs. The mere possession of religious convictions which contradict the relevant concerns of a political society does not relieve the citizen from the discharge of political responsibilities.' (quoting *Dist. Bd. of Ed. v. Gobitis,* 310 U.S. 586, 594–95, 60 S.Ct. 1010, 1012–13, 84 L.Ed. 1375 (1940)).

494 U.S. at 878–79, 110 S.Ct. at 1599–1600.

does not impose a substantial burden on the free exercise clause. To find otherwise would be to grant every individual the ability to disobey otherwise valid laws and neutral regulations under the guise of free religious exercise.[14]

■ Plaintiff has neither suffered violation of his free exercise of religion nor his protected free speech rights under the First Amendment. Manifestly, government may place reasonable time, place, and manner restrictions on religious as well as non-religious speech—especially in a non-public forum such as Murray City Council meetings. *See Cornelius v. NAACP Legal Defense and Educational Fund,* 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) (governmental workplace is treated as a non-public forum during hours of government business). The nature of a forum and "the pattern of its normal activities, dictate the kinds of regulations of time, place and manner that are reasonable". *Grayned v. City of Rockford,* 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972).

In *Heffron v. International Soc. for Krishna Consciousness, Inc.,* 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981), the Supreme Court upheld a governmental restriction on the manner of religious expression at a fair. The defendant in *Heffron* challenged the restrictions on similar grounds that plaintiff has challenged those of the Murray City Council. The Supreme Court held that such a restriction does not violate constitutionally protected free speech or free exercise of religion. *Heffron* is apropos to this case since the plaintiff in that case, like the plaintiff here, was not prohibited from exercising the right of expression only the means of exercising the right was restricted.

■ In the case at bar, plaintiff was not excluded from the Murray City Council meeting, nor was he prevented from airing

his views at the council meeting or in any other forum. Instead, he was asked to give his statement or "prayer" at a later portion of the meeting reserved for public comment.[15] As in *Heffron,* such a restriction does not constitute a violation of either free exercise of religion or freedom of speech.

**B. Establishment of Religion.**

Plaintiff brings a § 1983 claim based on the Establishment Clause of the First Amendment of the Federal Constitution[16], asserting that by excluding plaintiff's religious expression, defendants have unconstitutionally discriminated against plaintiff's religion and provided preferential treatment to "mainstream" religious views.

■ A fundamental tenet of the Establishment Clause is that the government shall be neutral and must not favor one religious view over another. *Lee v. Weisman,* 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). In that case the Supreme Court stated:

> [T]he principle that government may accommodate the free exercise of religion does not supersede the fundamental limitations imposed by the Establishment Clause, which guarantees at a minimum that a government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.' *Lynch v. Donnelly,* 465 U.S. 668, 678, 79 L.Ed.2d 604, 104 S.Ct. 1355 [1361 (1984)].

*Id.*

In *Marsh v. Chambers,* 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), the Supreme Court held that the Nebraska Legislature's chaplaincy practice did not violate the Establishment Clause. The Court compared the Nebraska Legislature's practice to that of the United States Congress where, since

---

**14.** The Supreme Court stated in *Cox v. New Hampshire,* 312 U.S. 569, 574, 61 S.Ct. 762, 765, 85 L.Ed. 1049 (1941):

Civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses.

**15.** *See Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 516, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (requiring government to leave open alternative channels of communication in light of regulation).

**16.** *See supra* note 6.

the creation of Congress, prayer has been offered every session. The Court refused to interpret the Establishment Clause as imposing more stringent first amendment limits on the states than are imposed upon the federal government and said:

> The tradition in many of the Colonies was, of course, linked to an established church, but the Continental Congress, beginning in 1774, adopted the traditional procedure of opening its sessions with a prayer offered by a paid chaplain ... Although prayers were not offered during the Constitutional Convention, the First Congress, as one of its early items of business, adopted the policy of selecting a chaplain to open each session with prayer.
>
> On September 25, 1789, three days after Congress authorized the appointment of paid chaplains, final agreement was reached on the language of the Bill of Rights ... Clearly the men who wrote the First Amendment Religion Clause did not view paid legislative chaplains and opening prayers as a violation of that Amendment, for the practice of opening sessions with prayer has continued without interruption ever since that early session of Congress. It has also been followed consistently in most of the states.

*Id.* at 793–95, 103 S.Ct. at 3337–38.

In *Marsh,* the Court overruled the Eighth Circuit, which had concluded—following application of the three-part test of *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111–12, 29 L.Ed.2d 745 (1971), as set out in *Committee for Public Education & Religious Liberty v. Nyquist,* 413 U.S. 756, 773, 93 S.Ct. 2955, 2965, 37 L.Ed.2d 948 (1973)—that the chaplaincy practice violated all three prongs of the test; i.e. that no secular purpose was presented, that the primary effect of selecting the same minister for 16 years and publishing his prayers was to promote a particular religious expression, and that use of state money for compensation and publication constituted unlawful entanglement. *Chambers v. Marsh,* 675 F.2d 228, 233–35 (1982). The Supreme Court declined to apply the *Lemon* test and simply overruled the Eighth Circuit based on a history of prayer analogous to the practice nationally adopted by the First Congress and followed traditionally since then.

Plaintiff asserts that once a city encourages and allows members of the public to give prayers during the "reverence portion" of its meeting, the Constitution requires the city to keep the forum open and available for the entire spectrum of religious expression, without restriction of access to the forum based on the content of the religious message to be expressed. Snyder Depo. at 86; Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment at 16–18. To the contrary of the wholly unrestricted approach advocated by plaintiff, the Supreme Court stated in *Marsh* that

> [t]he content of the prayer is not of concern to judges where, as here, there is no indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief. That being so, it is not for us to embark on a sensitive evaluation or to parse the content of a particular prayer.

*Id.,* 463 U.S. at 794–95, 103 S.Ct. at 3337–38. This may be taken to signal that the content of a prayer that exploits, proselytizes, disparages other faiths or beliefs, or advances any one religion may require judicial evaluation.

▮ In the case at bar, prayer is a traditional part of the Murray City Council meeting. The practice is reasonably regulated to fit within a designated "reverence portion" of the meeting, rather than the "citizen comment" portion of the meeting reserved for expression of political views and political discussion of city policies or practices. The reverence segment of the meeting is non denominational, non sectarian and non proselyting in character. Plaintiff's "prayer" could properly be presented in the "citizen comment" portion of the meeting, and plaintiff was offered that opportunity. Plaintiff's "prayer" was properly excluded from the "reverence portion" of the meeting, however, because it disparages the faith and beliefs of others, it constitutes political commentary concerning the city's practices, and it proselytizes and advances plaintiff's belief concerning church and state. This court holds that Murray City's actions which did not allow plaintiff to offer his particular "prayer" dur-

ing the reverence portion of the meeting, but did provide him with such an opportunity during the public comment portion of the meeting, did not violate the Establishment Clause.

### C. Due Process.

■ Plaintiff claims that his rights under the Fourteenth Amendment have been violated.[17] An essential prerequisite to any claim that the Fourteenth Amendment due process clause has been violated is the existence of a constitutionally cognizable liberty or property interest. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Under this court's analysis, plaintiff's religious expression does not pass as a "truly held" statement of belief. Because this threshold requirement is missing, and in view of the adequacy of other easily accessible methods of expression which were made available to plaintiff, no constitutionally cognizable liberty or property interest is implicated here and no substantive due process claim has been violated.

■ Plaintiff also asserts violation of his procedural due process rights because the Murray City Council denied him a hearing concerning its decision to reject plaintiff's "prayer." Plaintiff has no right to require the Murray City Council to conduct a hearing on whether plaintiff's "prayer" is fit to be an opening prayer. Moreover, since there was no deprivation of life, liberty, or property, defendants had no due process obligation

to provide plaintiff with such a hearing in any event.

### II. CLAIMS UNDER THE UTAH CONSTITUTION.

#### A. Private Actions Under Non–Self Executing Provisions of the Utah State Constitution.

■ There appears to be no direct statutory or common law private cause of action for violation of provisions of the Utah State Constitution which are not self-executing.[18] In *Colman v. Utah State Land Board,* 795 P.2d 622 (Utah 1990), the Utah Supreme Court recognized an exception in Article I § 22 which relates to just compensation for the taking of private property.[19] In *Colman,* the Court held the just compensation section of the Utah Constitution to be self-executing, mandatory, and obligatory. *Id.* at 635. The court noted that whether a particular constitutional provision is self-executing "involves the issue of whether the constitutional provision requires a legislative enactment to be enforced in the courts." *Id.* at 630. The free exercise, establishment, and due process clauses of the Utah Constitution are not self-executing and contain no provision or mechanism for court action or remedy.[20]

■ The Utah Supreme Court entertained a private cause of action based upon Article I, Section 4, of the Utah Constitution in *Society of Separationists v. Whitehead,* 870 P.2d 916 (Utah 1993) in order to review a written policy of the Salt Lake City Coun-

---

**17.** The Fourteenth Amendment provides:
No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any State deprive any person of life, liberty, or property without due process of law;* ... (emphasis added).

**18.** There is no statutory authorization in Utah for the bringing of private actions for violation of civil rights under the Utah Constitution analogous to the Federal Civil Rights Act, 42 U.S.C. § 1981, *et seq.,* under which private actions for violation of the United States Constitution may be asserted.

**19.** Article I, section 22 of the Utah Constitution provides:
Private property shall not be taken or damaged for public use without just compensation.

**20.** In *Sauers v. Salt Lake County,* 735 F.Supp. 381, 386 (D.Utah 1990), this court observed:

[I]n the absence of remedies otherwise expressly provided, there appears to be no general right to a private cause of action for violation of the Utah State Constitution ...

Of course, whether a private cause of action could be brought for violation of Utah State Constitutional provisions is a matter for determination by the Utah Supreme Court. *Id.* at 386 n. 9. *See also Condemarin v. University Hospital,* 775 P.2d 348 (Utah 1989) (Hall, J., dissenting) (noting that no private cause of action under the Utah State Constitution appears to exist since no remedy is provided); *Brown v. Wightman,* 47 Utah 31, 151 P. 366 (1915).

cil.[21] In the case at bar, while Murray City follows a tradition and practice that "all meetings will start with prayer," it "has not established formal policies regarding the nature and/or content of [the] reverence portion" of the meeting.[22] Plaintiff attacks the Murray City practice of permitting prayers insofar as it would exclude his expression, but seeks to participate in the "reverence portion" of the meeting by presenting his "prayer" and insisting that it be presented in that segment. In furtherance of plaintiff's asserted right to do so, he brings direct causes of action under non-self-executing provisions of the Utah Constitution. This court opines and holds that such direct actions may not be asserted under Utah law.

In addition, as is next discussed, this court also opines that plaintiff's claims are barred because defendants are immune from such claims under Utah law.

### B. Utah Governmental Immunity Act.

The Utah Governmental Immunity Act (the "Act") provides:

> Except as may be otherwise provided in this chapter, all governmental entities are immune from suit for any injury which results from the exercise of a governmental function ...

Utah Code Ann. § 63–30–3(1) (1993).

■ The Act does not provide for waiver of immunity for claims based on the free exercise, establishment, and/or due process clauses of the Utah Constitution as against political subdivisions of the state. A "political subdivision" is defined as any county, city, town, school district, public transit district, redevelopment agency, special improvement or taxing district, or other governmental subdivision or public corporation. Utah Code Ann. § 63–30–2(7) (1994). It follows that Murray City Corporation is immune from plaintiff's claims under Utah law.[23]

■ As to governmental employees, such as defendant Murray City Attorney Hall, the Act does not waive immunity from claims for damages asserted in actions which arise from the negligent violation of civil rights.[24] In other actions, such as intentional conduct, the statute provides only a limited waiver for acts "due to fraud or malice." [25] Moreover, in those situations where immunity is waived, the notice and other requirements of the legislation must be met as a condition precedent to bringing an action.

■ This court holds that Murray City Attorney, Defendant Hall, is not subject to plaintiff's suit. It appears that the state has not waived immunity of its employees for injuries arising out of alleged negligent violation of civil rights, and that as to other actions for damages against state employees, immunity has been waived only for conduct

---

21. The Utah Supreme Court in *Whitehead* considered whether the opening ceremony policy for prayers in city council meetings adopted by the Salt Lake City Council was constitutional under the Utah Constitution. That policy provides in part: This opening to the City's legislative process is solely for a secular purpose, among other reasons, to: (1) provide a moment during which Council members and the audience can reflect on the importance of the business before the Council; (2) promote an atmosphere of civility; (3) encourage lofty thought and high-mindedness; (4) recognize cultural diversity; (5) foster sensitivity for and recognize the uniqueness of all segments of our community. The presentations are meant to be non-denominational and non-proselytizing in character; however, the City will not dictate the form or content.

22. *See supra* note 3.

23. The Supreme Court of Utah has not passed upon the constitutionality of the Governmental Immunity Act as applied to actions based upon the Utah Constitution, and this court declines to do so.

24. Immunity is waived for a negligent act or omission of an employee committed within the scope of their employment *except if the injury arises out of ... a violation of civil rights.* Utah Code Ann. § 63–30–10(2) (emphasis added).

25. The Governmental Immunity Act states:

> An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee may be held personally liable for acts or omissions occurring during the performance of the employee's duties, within the scope of employment, or under the color of authority, *unless it is established that the employee acted or failed to act due to fraud or malice.*

Utah Code Ann. § 63–30–4(4) (1993) (emphasis added).

due to fraud or malice. There is no allegation here of fraud or malice as concerns defendant Hall, or that he was acting outside the scope of his authority or without color of authority. Also, the notice requirements of the Utah Governmental Immunity Act have not been complied with. Accordingly, this court opines and rules that Murray City Attorney Hall is immune from plaintiff's damages claims. In addition, as previously discussed, the said defendant is not subject to a direct lawsuit based upon the Utah Constitution.

Based on the foregoing, it is hereby

ORDERED, Defendants' Motion for Summary Judgment is GRANTED and plaintiff's motions for summary judgment and partial summary judgment are DENIED with respect to claims brought under 42 U.S.C. § 1983 which assert violation of the free exercise of religion, the establishment of religion, the free speech, and the due process clauses of the United States Constitution; it is further

ORDERED, Defendants' Motion for Summary Judgment is GRANTED and plaintiff's motions are DENIED with respect to claims asserted under the Utah State Constitution.