IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Brief February 3, 2003

## GURKIN'S DRIVE-IN MARKET v. ALCOHOL AND LICENSING COMMISSION OF THE CITY OF COLLIERVILLE

Direct Appeal from the Chancery Court for Shelby County
No. CH-01-2581-1     Walter L. Evans, Chancellor

No. W2002-01648-COA-R3-CV - Filed March 21, 2003

Appellant was found by the Beer Board to be in violation of a city ordinance prohibiting the sale of beer to a minor. The Board suspended Appellant's beer permit for forty-five days. It is contended on appeal that the proceedings should be held null and void because the hearing began with a prayer and further contended that the trial court applied the wrong standard of review. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Leslie I. Ballin and James W. Curry, Memphis, Tennessee, for the appellant, Gurkin's Drive-In Market.

Edward J. McKenney, Jr., Memphis, Tennessee, for the Collierville Beer Board.

## OPINION

This appeal by Gurkin's Drive-In Market (Gurkin's) results from a hearing before the Beer Board of the City of Collierville. Having determined that there had been a violation of the city ordinance prohibiting the sale of beer to a minor, the board suspended Gurkin's beer permit for a period of 45 days.[1] Gurkin's then sought review by the filing of a petition for certiorari and supercedes in the Chancery Court of Shelby County, Tennessee.

Following a hearing before the chancellor, which included the administrative record and additional evidence, the court ruled in favor of the respondent beer board and the cause was

---

[1] Section 2-214 of the applicable ordinance provides that it shall be unlawful for any beer permit holder to "sell or allow the sale to or consumption by any person under twenty-one (21) years of age."

dismissed. Gurkin's perfected a timely appeal to this Court and the issues presented by Appellant in its brief are as follows:

I.     Whether a decision of the Collierville Beer Board should be held null and void because the hearing at which the Beer Board suspended the Appellant's permit began with a prayer, which is in violation of the First Amendment of the United States Constitution.

II.    Whether the Chancery Court of Shelby County committed an error when the Chancellor failed to apply a de novo standard of review to the decision by the Collierville Beer Board in reviewing the suspension of Gurkin's beer permit.

At the hearing before the beer board, it was stipulated that Gurkin's had a license to sell beer in Collierville on the date in question, November 27, 2001, issued to Gurkin's Grocery # 1 located at 390 East Highway 57. It is further stipulated that the following violations occurred and were disposed of as follows:

April 21, 1984, sale of beer to a minor, 30 days probation given by the beer board on May 15, 1984.

November 13, 1998, sale of beer to a minor, fined $600 by the beer board on December 15, 1998.

November 3, 1999, sale of beer to a minor, $1,500 fine.

April 19, 2001, sale of beer to a minor, $1,500 fine.

Officer Jimmy Brister of the Collierville Police Department testified that he was involved in a sting operation relative to the sale of beer to minors on November 27, 2001. The operation involving the Gurkin Store included another individual which Officer Brister described as a cooperating individual. Officer Brister further testified as follows:

Q.     Did you take action with respect to that cooperating individual before the operation started?

A.     Yes, sir.

Q.     Tell us what you did.

A.     Cooperating individual came to our office; I searched him and removed anything from his person except his Tennessee driver [sic] license, took his wallet and his money, placed it in the trunk where he was not to have access.

He was then fitted with a wireless transmitter and provided with the money to buy the alcohol.

Q.   After that occurred, did this cooperating individual approach the premises of Gurkin's Number 1 at 390 East Poplar?

A.   Yes, sir.

Q.   Were you with him the entire time from the time you searched him until he approached that place of business?

A.   Yes, sir.

Q.   And did he go into the store?

A.   Yes, sir.

Q.   Did you?

A.   Yes, sir.

Q.   Tell us what occurred.

A.   I entered the store first, stood right by the front door, observed the cooperating individual walk in then walk back to the beer cooler. He got a 24-ounce can of Bud Light, went to the cash register, handed it to the clerk. The clerk asked him for his identification, he handed him his Tennessee driver [sic] license. The clerk looked at it, handed it back to him and then sold him the beer.

Q.   What did you - - what did he do after that?

A.   Placed the receipt and the beer inside of a bag. The informant walked outside to his car. I walked out behind him retrieved the beer from him, checked him again to make sure he did not have any other identification on him, secured the beer in my car and myself and my partner, Gary Highland, then went back into the store and issued a misdemeanor citation to the clerk.

. . . .

Q.   Did you observe the Tennessee driver [sic] license of the cooperating individual?

-3-

A.      Yes, sir.

Q.      And did it reflect that he was over or under the age of 21?

A.      He was under the age of 21. It even stated, ["]Under 21 years of age["] on the license.

Q.      Do you remember the year of his birth?

A.      It was 1983.

Q.      Do you know the other dates?

A.      I don't remember the month offhand, no, sir.

        MR. CATES: That is all.

        MR. HOFFMAN: I have a question. How did the license state he was under 21?

        OFFICER BRISTER: It says in red letters "under 21" on the license.

        MR. HOFFMAN: And that was the license presented?

        OFFICER BRISTER:  Yes, sir.

Our standard of review is set forth in *Sigler v. Metropolitan Beer Permit Bd.*, 62 S.W.3d 732 (Tenn. Ct. App. 2001), as follows:

> In a case involving a beer permit, the Board's decision may be appealed to circuit or chancery court per section 57-5-108 of the Tennessee Code. On appeal to circuit or chancery court, additional proof may be presented, and the statute provides for a trial *de novo*, which, in this context, means that the cause is tried as if it originated in circuit or chancery court, and the trial judge is required to make an independent judgment on the merits, substituting his or her judgment for that of the Board. *See Metropolitan Gov't of Nashville & Davidson County v. Martin*, 584 S.W.2d 643 (Tenn. 1979). On appeal from the circuit court, we review the trial court's findings of fact *de novo* with a presumption of correctness unless the preponderance of the evidence is otherwise. Regarding questions of law, our review is *de novo* with no presumption of correctness. Tenn. R. App. P. 13(d).

*Id*. at 734.

The Appellant contends that because the hearing before the Beer Board was opened with a prayer, this constitutes a violation of the First Amendment of the Constitution of the United States.[2] It is argued that this violation results in the action of the Beer Board becoming a nullity. The Appellant admits that it has cited no case law directly on point, but argues previous opinions may be applied by inference. In support of this argument, Appellant cites *United Christian Scientists v. Christian Science Bd. of Directors*, 616 F. Supp. 476, 477 (D.D.C. Cir. 1985), aff'd 829 F.2d 1152 (D.C.Cir. 1987). In that case, the U.S. District Court held a private copyright law unconstitutional and that decision was affirmed by the District of Columbia Circuit of the U.S. Court of Appeals. The issue before the Court was the constitutional validity of a private law which granted an extended copyright to Christian Science Board of Directors of the First Church of Christ, Scientists on all editions of a writing which is the central theological text of the Christian Science faith. The District Court found that both the purpose and effect of the private law were to aid religion which contravened the Establishment Clause. The Appellate Court concluded that the private law offended fundamental principles of separation of church and state and affirmed. The Appellant in the present action does not contend that the decision by the Beer Board was unconstitutional, but that the fact that a prayer was given prior to the hearing and ultimate rendering of a decision casts a pall on the entire proceedings, thus rendering the decision a nullity. Appellant does not challenge the ordinance under which the Beer Board operates.

In *Marsh v. Chambers*, 463 U.S. 783 (1983), a member of the Nebraska Legislature sought injunctive relief against that body's practice of beginning each session with a prayer by a chaplain paid by the State with the Legislature's approval. The Court held that this practice did not violate the establishment clause. Speaking through Chief Justice Berger, a majority of the Court held as follows:

> (a) The practice of opening sessions of Congress with prayer has continued without interruption for almost 200 years ever since the First Congress drafted the First Amendment, and a similar practice has been followed for more than a century in Nebraska and many other states. While historical patterns, standing alone, cannot justify contemporary violations of constitutional guarantees, historical evidence in the context of this case sheds light not only on what the drafters of the First Amendment intended the Establishment Clause to mean but also on how they thought that Clause applied to the chaplaincy practice authorized by the First Congress. In applying the First Amendment to the states through the Fourteenth Amendment, it would be incongruous to interpret the Clause as imposing more stringent First Amendment limits on the states than the draftsmen imposed on the Federal Government. In light of the history, there can be no doubt that the practice of opening legislative sessions with prayer has become part of the fabric of our society.

---

[2]**Freedom of religion, of speech, of the press and right of petition.** Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

U.S. Const. amend. I, § 1.

> To invoke divine guidance on a public body entrusted with making the laws is not, in these circumstances, a violation of the Establishment Clause; it is simply a tolerable acknowledgment of beliefs widely held among the people of this country.
>
> (b) Weighed against the historical background, the facts that a clergyman of only one denomination has been selected by the Nebraska Legislature for 16 years, that the chaplain is paid at public expense, and that the prayers are in the Judeo-Christian tradition do not serve to invalidate Nebraska's practice.

*Id*. at 783.

In ***Bogen v. Doty***, 598 F.2d 1110 (8th Cir., 1979), citizens and taxpayers brought action seeking to enjoin the County Board of St. Louis County, Minnesota, from adhering to a resolution which provided for an opening invocation of its public meetings. The resolution provided that each board meeting be preceded by a prayer given by an invited local clergyman. The lower court had held that this practice was not in violation of the Establishment Clause and the Circuit Court affirmed. The opinion noted ***Engel v. Vitale***, 370 U.S. 421 (1962), wherein the State of New York published a prayer and directed that it be said daily in each public school classroom. This was held to be unconstitutional. The Court stated: "It is clear that the Supreme Court was particularly influenced in ***Engel v. Vitale*** by the fact that the state had written a specific prayer and directed its recitation. The present case does not mirror that practice." ***Bogen***, 598 F.2d at 1113.

In ***Lincoln v. Page***, 241 A.2d 799 (N.H. 1968), the plaintiff, a resident taxpayer and voter of the Town of Meredith, New Hampshire, petitioned for an injunction to restrain the town and its moderator from the practice of inviting various local clergy to open town meetings with an invocation. The court noted that the invocation is neither composed, selected or approved by the defendant. The Supreme Court of New Hampshire found no violation of the Establishment Clause. Assuming ***arguendo*** that the Appellant is correct, the trial court conducts a review ***de novo*** of the beer board's decision which "means that the cause is tried as if it originated in circuit or chancery court, and the trial judge is required to make an independent judgment on the merits, substituting his or her judgment for that of the Board." ***Sigler v. Metropolitan Beer Permit Bd.***, 62 S.W.3d 732, 734 (Tenn. Ct. App. 2001).

In ***Marsa v. Wernik***, 430 A.2d 888 (N.J. 1981) (***cert. denied*** by 454 US. 958), the plaintiff was challenging the constitutionality of a nondenominational invocation or silent meditation at the beginning of meetings of the town council. The plaintiff was a regular attendee at such meetings, a resident and taxpayer of the municipality, and an atheist. Following roll call, the mayor asked those who wished to rise for an invocation or silent mediation, which was then delivered by a particular member of the council. The member determined the contents and the court noted that there was nothing to suggest that it was in any way subject to the approval of any other official or person. The plaintiff contended that this practice may have the effect of dissuading himself and others from attending council meetings. In holding that this practice did not violate the Establishment Clause, the court noted that the United States Supreme Court dictated what has

become known as the tripartite test in ***Committee for Public Education and Religious Liberty v. Nyquiste***, 413 U.S. 756 (1973), wherein the Court said:

> [T]o pass muster under the Establishment Clause the law in question, first, must reflect a clearly secular legislative purpose, second, must have primary effect that neither advances nor inhibits religion, and, third, must avoid excessive entanglement with religion.

*Marsa*, 430 A.2d at 893 (quoting ***Nyquiste***, 413 U.S. 756 at 772-773).

In determining that the case before them met constitutional muster, the ***Marsa*** court concluded as follows:

> Several factors, to summarize, merge and coalesce in this case to permit the challenged practice to survive the First Amendment attack made upon it. These involve the secular purpose of the practice, the neutral content of most of the invocations, the lack of a denominational tone or sectarian emphasis, and the absence of a religious or quasi-religious setting or the involvement of clergy. Additionally, the lack of a formal official authorization of the contents of the practice, the nonreligious context of its use as part of a legislative meeting and its relatively incidental role in the public meeting, as well as the nonmandatory participation of adults, as opposed to children, and its grounding in a longstanding tradition, all contribute to the conclusion that the First Amendment has not been offended.

*Marsa*, 430 A.2d at 899.

In each of the above cases in which an opening prayer was found not to be in violation of the Establishment Clause, with the possible exception of ***Marsa v. Wernick***, the petitioners sought injunctive relief to prohibit this practice.[3] The petitioners in the present case did not seek injunctive relief. The cases cited above involved various prayer givers such as a chaplain paid by the state, invited local clergy, various local clergy, and members of the body. In the present case, after calling the meeting to order, the Chair stated "I will ask Mr. Harrison if he would give the invocation tonight." Mr. Harrison is not identified further in this record. Following recitation of the prayer by Mr. Harrison, roll was called and the Board heard two other matters prior to hearing the matter at issue here. The record further does not disclose whether meetings of the Beer Board are normally opened with prayer, or Mr. Harrison's profession or relationship with the Board. We presume from the roll call that he is not a member of the Beer Board. While we may presume from the nature of the proceedings that the content of the prayer was within Mr. Harrison's discretion, there is certainly nothing in this record to indicate that the invocation was composed or selected by the Board. Based upon the record before this Court, we find no violation of the Establishment Clause.

---

[3]The opinion in ***Marsa v. Wernick*** states that an action was brought challenging an invocation, prayer or silent meditation at the commencement of public meetings of a municipal governing body.

The Appellant next contends that the chancellor applied the wrong standard of review as evidenced by statements made when he rendered his oral ruling from the bench. They point to the following: "[f]actual issues are reviewed upon a standard of substantial and material evidence and not upon a broad de novo review."; "And it is clear based on the numerous cases the Court does not weigh the evidence presented before the Board."; "Also the court is not satisfied that the petitioner has carried the burden of showing that the Board acted arbitrarily or capricious in this action." While we agree with Appellant that these statements are in error, the order entered by the trial court states in part pertinent as follows:

> [T]he Court, after reviewing the administrative record, considering the additional testimonial and documentary evidence offered by Petitioner, considering the arguments of counsel and the applicable law, finds that, based upon the stipulations announced in open court and the undisputed facts as set forth in the administrative record, Petitioner violated the Collierville Beer Ordinance by selling beer to a minor on November 27, 2001; that this was Petitioner's second violation of said Ordinance within twelve months, its fourth violation of said Ordinance within a three year period of time and its fifth violation overall; that the Collierville Ordinance allows the past record of the permit holder to be considered and allows penalties to be imposed ranging from probation to revocation of the permit; that, under the circumstances, this Court considers the imposition of a [forty-five] day suspension to be reasonable.

It is a well-established principle of law in this jurisdiction that: "[a] Court speaks only through its written judgments, duly entered upon its minutes. Therefore, no oral pronouncement is of any effect unless and until made a part of a written judgment duly entered." ***Evans v. Perkey***, 647 S.W.2d 636, 641, (Tenn. Ct. App. 1982); ***also see In re Adoption of E.N.R.***, 42 S.W.3d 26, 31 (Tenn. 2001); ***City of Newport v. Masengill Auction Co.***, 19 S.W.3d 789, 795 (Tenn. Ct. App. 1999)(quoting ***Evans v. Perkey***, 647 S.W.2d 636 (Tenn. Ct. App. 1982)). The trial court's order states that the court reviewed the administrative record, considered the additional testimony and documentary evidence offered by Petitioner and found based upon said stipulations and the undisputed facts set forth in the administrative record, that the Petitioner had violated the ordinance by the sale of beer to a minor. The order indicates that the trial court did conduct a ***de novo*** review as it was required to do.

It is the duty of this Court to likewise conduct a ***de novo*** review of the trial court's findings of fact with the presumption of correctness unless the preponderance of the evidence is otherwise. Our review of questions of law is ***de novo*** with no presumption of correctness. ***Sigler v. Metropolitan Beer Permit Bd.***, 62 S.W.3d 732, 734 (Tenn. Ct. App. 2001).

The testimony of Officer Brister was unchallenged and the past violations of the permit holder, as heretofore stated, were stipulated. Section 2-223(8) of the ordinance allows the Beer Board, in assessing a penalty, to consider the past record of the permit holder and location. Having conducted a ***de novo*** review, we have determined that the judgment of the trial court is supported

by a preponderance of the evidence and the judgment is affirmed.  The costs of this appeal are taxed to the Appellant, Gurkin's Drive-in Market, and its surety.


                                                  _____

                                                  DAVID R. FARMER, JUDGE