*This opinion is subject to revision before final*
*publication in the Pacific Reporter*

**2015 UT 31**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SUMMUM, a Corporation Sole and Church,
*Appellant,*
*v.*
PLEASANT GROVE CITY, a municipal corporation,[1]
*Appellees.*

No. 20120717
Filed January 30, 2015

Fourth District, Provo Dep't
The Honorable Fred D. Howard
No. 110401502

Attorneys:

Brian M. Barnard, Stewart Gollan, Provo, for appellant

Edward L. White III, Francis J. Manion, Geoffrey Surtees,
Erik M. Zimmerman, Ann Arbor, Michigan,
Gregory N. Hoole, Salt Lake City, for appellees

JUSTICE DURHAM authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE NEHRING and JUSTICE PARRISH joined.

JUSTICE LEE filed an opinion concurring in part and in the
judgment, in which CHIEF JUSTICE DURRANT joined.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1 We are asked to decide whether the religious liberty clause
of the Utah Constitution requires a city to install a proposed
religious monument in a public park where a Ten Commandments
monument is already situated. We hold that it does not. Because we
have not been asked to do so, we do not decide whether the Ten

---

[1] BRUCE CALL, Mayor and former City Council Member, JIM
DANKLEF, former Mayor, MIKE DANIELS, former Mayor, LEE JENSEN,
City Council Member, CINDY BOYD, City Council Member, JEFF
WILSON, City Council Member, VAL DANKLEF, City Council Member,
KIMBERLY ROBINSON, City Council Member, G. KEITH CORRY, former
City Council Member, MARK ATWOOD, former City Council
Member, SCOTT DARRINGTON, City Administrator, and FRANK MILLS,
former City Administrator, *Appellees.*

Commandments monument at issue in this case is a prohibited use of public money or property for "religious worship, exercise or instruction" under article I, section 4 of the Utah Constitution. Instead, we conclude that the remedy the plaintiff seeks—the installation of a second monument—is unavailable as a matter of constitutional law.

## BACKGROUND

¶2    Since 1971, a monument displaying a representation of the Ten Commandments tablets, including the full text, has stood in Pioneer Park, a city park owned and maintained by Pleasant Grove City. The Ten Commandments monument was donated to Pleasant Grove by a local chapter of the Fraternal Order of Eagles. The park also contains several structures and monuments that Pleasant Grove has collected or accepted from various private donors over the years, including pioneer era buildings, a September 11th memorial, and a rose garden.

¶3    Summum, is a corporation sole and church. Established in Salt Lake City in 1975, the religion, according to its tenets, is founded on teachings that predate the ancient Egyptians. These teachings are summarized in the Seven Aphorisms, which Summum adherents believe to be complementary to the Ten Commandments. In 2003, the President of Summum offered to donate and erect a Seven Aphorisms monument in Pioneer Park that would be similar in size and nature to the existing Ten Commandments monument.

¶4    Pleasant Grove declined Summum's offer, explaining that it had an established practice of accepting only monuments that were either (1) directly related to the history of the city or (2) donated by groups with long-standing ties to the city. About nine months later, the city passed a resolution codifying the criteria to be considered when deciding whether to place a privately donated monument on public property:

> 1. The item must directly relate to the history of Pleasant Grove and have historical relevance to the community. . . . 2. It is being donated by an established Pleasant Grove civic organization with strong ties to the community; or, 3. The donors have a historical connection with Pleasant Grove City; and 4. Placement does not create any safety hazards; and 5. It is not obscene.

¶5    Summum sued Pleasant Grove in federal court, alleging that the city's decision not to accept the proposed Seven Aphorisms

monument violated the Free Speech and Establishment clauses of the federal Constitution. In *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 481 (2009), the United States Supreme Court rejected Summum's free speech claim, holding that the placement of a monument on public property was a form of government speech that is not regulated by the Free Speech Clause. Subsequently, the federal district court rejected Summum's federal Establishment Clause claim. *Summum v. Pleasant Grove City*, No. 2:05CV638 DAK, 2010 WL 2330336, at *3 (D. Utah June 3, 2010).

¶6    Summum then filed a complaint in state court, alleging that Pleasant Grove had violated the religious liberty clause of the Utah Constitution. The complaint sought an injunction requiring Pleasant Grove to erect and permanently display the proposed Seven Aphorisms monument. Both Summum and Pleasant Grove moved for summary judgment on Summum's complaint. The district court concluded that Pleasant Grove's decision not to install the monument did not violate the Utah Constitution and granted summary judgment in favor of the city. Summum appealed. We review the district court's interpretation of the Utah Constitution for correctness. *Snyder v. Murray City Corp.*, 2003 UT 13, ¶ 17, 73 P.3d 325.

## ANALYSIS

### I

¶7    Article I, section 4 of the Utah Constitution, Utah's religious liberty clause, contains provisions that both protect the free exercise of religion and prohibit the government from promoting religion. *See Soc'y of Separationists, Inc. v. Whitehead*, 870 P.2d 916, 935 (Utah 1993). Summum relies on the provision of the religious liberty clause prohibiting financial support of religion: "No public money or property shall be appropriated for or applied to any religious worship, exercise or instruction . . . ." UTAH CONST. art. I, § 4.

¶8    We interpreted this provision in the context of prayers offered by private individuals at the commencement of city council meetings and developed a two-step analysis to determine the constitutionality of this practice. First, we addressed whether prayer offered in a public meeting of a government body constituted "religious worship, exercise or instruction." *Soc'y of Separationists*, 870 P.2d at 930; *see also Snyder v. Murray City Corp.*, 2003 UT 13, ¶ 21, 73 P.3d 325. Having concluded that the prayerful address of a deity is a religious exercise, we then examined whether arranging for and permitting prayer at a city council meeting amounted to an unconstitutional appropriation of public money or property to this

religious exercise. *Soc'y of Separationists*, 870 P.2d at 932. Under this second step, we adopted a neutrality test, reasoning that when the government provides money or property in an impartial manner, "any benefit flowing to religious worship, exercise, or instruction can be fairly characterized as indirect because the benefit flows to all those who are beneficiaries of the use of government money or property, which may include, but is not limited to, those engaged in religious worship, exercise, or instruction." *Id.* at 937. The provision of money or property to religious exercise is indirect, and therefore constitutional, if (1) "the money or property [is] provided on a nondiscriminatory basis" and (2) "the public money or property [is] equally accessible to all." *Id.* at 938; *accord Snyder*, 2003 UT 13, ¶ 20.

¶9    Citing this two-step test from *Society of Separationists* and *Snyder*, Summum argues that Pleasant Grove's acceptance of the Ten Commandments monument, but subsequent rejection of a Seven Aphorisms monument, violated the constitutional prohibition against the appropriation of public money for religious exercise. Under the first step, Summum asserts that the display of the Ten Commandments monument in a public park constitutes "religious worship, exercise or instruction." Summum then argues that under the second step the allocation of public property for the monument was not neutral because Pleasant Grove subsequently rejected its offer to display its own religious monument. Notably, Summum does not seek the removal of the Ten Commandments monument because of this alleged constitutional violation. Instead, Summum requests an injunction requiring Pleasant Grove to display its own proposed monument.

¶10   We do not address Summum's first contention that the Ten Commandments monument amounts to "religious worship, exercise or instruction."[2] Instead we affirm the district court's grant of summary judgment in favor of Pleasant Grove on the ground that, regardless of whether the Ten Commandments monument constitutes religious worship, exercise, or instruction, the religious liberty clause of the Utah Constitution does not require a court to

---

[2]   We note that Pleasant Grove argues that the Ten Commandments monument, viewed in the context of the other historical displays within Pioneer Park, does not convey a religious message, but rather a historical message about the importance of this biblical scripture to Pleasant Grove's founding citizens. *See Thomas v. Daughters of Utah Pioneers*, 197 P.2d 477, 488–90 (Utah 1948) (the impartial display of artifacts from Mormon pioneers in a state-funded museum did not violate Utah's religious liberty clause)

force Pleasant Grove to permanently display a similar Seven Aphorisms monument. We come to this conclusion for two reasons.

¶11   First, an injunction requiring Pleasant Grove to display the Seven Aphorisms monument would not satisfy the neutrality requirement articulated in *Society of Separationists* and *Snyder*. Assuming that the Ten Commandments monument amounts to religious exercise or instruction, requiring Pleasant Grove to erect a second religious monument would not render the allocation of public property and money to the two monuments neutral. The citizens of Pleasant Grove, and Utah in general, undoubtedly espouse a broad variety of religious views, including adherence to one of multiple religious denominations, agnosticism, or atheism. Displaying monuments that communicate the beliefs of only two of these viewpoints would not amount to an impartial distribution of public property among the spectrum of religious views held by Utah citizens. And because there is a finite amount of space in Pioneer Park, allowing all interested groups to install their own religious or antireligious monuments in the park would be unworkable. *See Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 479 (2009) ("A public park, over the years, can provide a soapbox for a very large number of orators — often, for all who want to speak — but it is hard to imagine how a public park could be opened up for the installation of permanent monuments by every person or group wishing to engage in that form of expression."). Indeed, ordering Pleasant Grove to allocate public property towards a monument Summum concedes to be religious in nature would directly contradict the prohibition contained in article I, section 4.

¶12   Second, we hold that the neutrality test we adopted in the context of prayers offered during government meetings does not apply to public monuments. Because the allocation of public money or property to a permanent religious monument is per se not neutral, the appropriate remedy for a monument constituting "religious worship, exercise or instruction" would not be the forced installation of a second monument.

¶13   The reasoning behind the adoption of the neutrality test in *Society of Separationists* demonstrates why this test does not apply to monuments. In that case, we held that prayers offered during city council meetings utilized public property because the process of permitting individuals to offer them used "city facilities, equipment, resources, and employee time." *Soc'y of Separationists*, 870 P.2d at 932. We reasoned, however, that if the Utah Constitution required an absolute bar of religious expression by private individuals on public property,

it would mean that while the government could allow a political group to use a public park for a rally, it could not allow a religious group to use the park for a revival. Similarly, if an open microphone and soapbox were set up outside city hall for the use of any individual who wished to speak, the government could not permit its use by those who wanted to pray, conduct an impromptu religious service, or proselytize others, but could permit neo-Nazis, the Ku Klux Klan, the John Birch Society, the Society of Separationists, or members of the Democratic or Republican Party to speak.

*Id.* at 934. We rejected such an absolutist interpretation because it "would evidence an affirmative hostility toward religion," which would contradict other provisions of the federal and Utah Constitutions that protect religious expression and free speech. *Id.* at 934–35. Instead, we adopted a neutrality test that permitted the use of public property in support of private religious expression so long as government benefits are "provided on a nondiscriminatory basis" and are "equally accessible to all." *Id.* at 938.

¶14  Thus we adopted the neutrality test in the specific context of transient religious expression by private individuals on public property. In the examples we cited in *Society of Separationists*, the public property at issue—public buildings and equipment, such as a microphone and sound system—was itself neutral. So long as access to these public resources is provided in an impartial manner, private use of public property to express religious sentiments does not violate the religious liberty clause of the Utah Constitution. If, for example, Pioneer Park had a pavilion available for group reservations, Pleasant Grove could allow a Christian church group to use the pavilion for an ice cream social where prayers would be offered and religious sentiments expressed, so long as the city also allowed equal access to the pavilion for an atheist barbeque or a Buddhist potluck dinner.

¶15  The Ten Commandments monument in this case, however, is fundamentally different from a park pavilion; it is not a neutral conduit for private expression. Instead, the monument is itself government speech. *Pleasant Grove*, 555 U.S. at 470. When Pleasant Grove accepted the donated monument, it adopted the message conveyed by the monument as its own. *Id.* at 470–72. Because the government property at issue in this case is itself the message, it cannot be allocated in an impartial manner since monuments

"monopolize the use of the land on which they stand and interfere permanently with other uses of public space."[3] *Id.* at 479.

¶16 Therefore the second step of the analysis we applied in *Society of Separationists* and *Snyder*—the neutrality test—has no application in the context of government monuments. The only relevant question under article I, section 4's prohibition against the use of public money or property for religious purposes is whether a monument constitutes "religious worship, exercise or instruction." We do not reach that question, however, because Summum seeks a remedy that we may not constitutionally grant.

¶17 In this case, Summum attempts to use the neutrality test as a tool to facilitate the placement of its own proposed monument in Pioneer Park. It argues that the district court should order the installation of a Seven Aphorisms monument in order to establish an impartial allocation of public property towards religious expression in the park. But because the neutrality test does not apply in the context of public monuments, this tool is unavailable to Summum. We therefore affirm the summary judgment below.

II

¶18 This opinion does not foreclose the possibility of adopting a context-dependant approach to determine whether a public monument constitutes an impermissible use of public property for "religious worship, exercise or instruction" under the first step of the *Society of Separationists* test. The U.S. Supreme Court has employed such a context-driven approach when determining whether the Establishment Clause of the federal Constitution prohibits government holiday displays and monuments that constitute "government endorsement of religion." *Cnty. of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573, 601 (1989). In applying this endorsement test, the Court has examined the context of a particular holiday display or public monument to determine the message conveyed by the display or monument in question. *McCreary Cnty., Ky. v. ACLU of Ky.*, 545 U.S. 844, 867–68, 874 (2005) (constitutionality of a Ten Commandments monument depends upon the context in which the monument is displayed); *Cnty. of Allegheny*, 492 U.S. at 595 (opinion of Blackmun, J.) ("[T]he question is what viewers may fairly understand to be the purpose of the display. That inquiry, of necessity, turns upon the context in which the contested object

---

[3] One could imagine, of course, a monument designed to permit citizens to post temporary messages for public consumption. *See Pleasant Grove*, 555 U.S. at 480. In that theoretical situation, the neutrality test might apply.

appears . . . ." (citation omitted) (internal quotation marks omitted)). In other words, the Supreme Court has looked to context to determine whether the message conveyed is a permissible secular communication or a prohibited endorsement of religion. *Compare Cnty. of Allegheny*, 492 U.S. at 598 ("[T]he effect of a crèche display turns on its setting. Here, . . . nothing in the context of the display detracts from the crèche's religious message."), *with id.* at 620–21 (opinion of Blackmun, J.) (the use of a menorah as part of a larger holiday display did "not have an effect of endorsing religious faith").

¶19 The text and history of Utah's religious liberty clause differs significantly from that of the Endorsement Clause, and we have charted our own course in interpreting this clause of the Utah Constitution. *See Soc'y of Separationists, Inc. v. Whitehead*, 870 P.2d 916, 940 (Utah 1993). But that does not mean that the context in which a particular monument is displayed does not play a similar role in determining whether the monument conveys an impermissible message. Indeed, this court has implied that context is an important consideration when it held that the impartial display of artifacts from Mormon pioneers in a state-funded museum did not violate the Utah Constitution's religious liberty clause. *Thomas v. Daughters of Utah Pioneers*, 197 P.2d 477, 488–90 (Utah 1948); *see also Lynch v. Donnelly*, 465 U.S. 668, 692 (1984) (O'Connor, J., concurring) ("[A] typical museum setting, though not neutralizing the religious content of a religious painting, negates any message of endorsement of that content.").

¶20 Any examination of the context of a public monument to determine what the public would understand the message conveyed by the monument to be, however, would be undertaken under the first step of the *Society of Separationists* test. This first step inquires whether a challenged monument or practice "constitutes religious worship, exercise or instruction." *Soc'y of Separationists*, 870 P.2d at 930 (internal quotation marks omitted). We need not, and do not, engage in such an analysis in relation to the Ten Commandments monument situated in Pioneer Park in this case. *Supra* ¶ 10. Thus, our holding that the second step of the *Society of Separationists* test does not apply to monuments has no bearing on the question of how courts should determine what the message conveyed by a challenged monument is.

_____

JUSTICE LEE, concurring in part and concurring in the judgment:

¶21 I concur in paragraphs 1 through 11 of the majority opinion, and also in the judgment affirming the district court's

summary dismissal of the complaint in this case. I write separately, however, because I disagree with the analysis in the balance of the court's opinion, which strikes me as internally inconsistent and potentially confusing.

¶22    Summum asserts a right under article I, section 4 of the Utah Constitution to have its "Seven Aphorisms" monument displayed in Pleasant Grove City's Pioneer Park. Because that park already includes a Ten Commandments monument that Summum views as an item of "religious worship, exercise or instruction" under article I, section 4, Summum asserts a right to add its own parallel item to the City's monuments in Pioneer Park. And in support of this claim Summum invokes the neutrality test set forth in *Society of Separationists, Inc. v. Whitehead*, 870 P.2d 916 (Utah 1993).

¶23    I agree with the majority that this claim fails on the threshold ground that "an injunction requiring Pleasant Grove to display the Seven Aphorisms monument would not satisfy the neutrality requirement articulated in *Society of Separationists*," in that "a second religious monument would not render the allocation of public property and money to the two monuments neutral." *Supra* ¶ 11. Given that "[t]he citizens of Pleasant Grove, and Utah in general, undoubtedly espouse a broad variety of religious views, including adherence to one of multiple religious denominations, agnosticism, or atheism," there is no basis for concluding that a mere two monuments (Ten Commandments and Seven Aphorisms) would render "neutral" the government's use of public money or property. *Supra* ¶ 11.

¶24    That is all we need to say to decide this case. We need not, and in my view we should not, proffer a view on the "second" ground articulated by the majority for its holding—that "the neutrality test we adopted in the context of prayers offered during governmental meetings" could never be applied in a manner upholding religiously oriented "public monuments." *Supra* ¶ 12. The applicability of the *Society of Separationists* neutrality test is not one we need to reach because Summum's claim fails on the threshold ground that it has sought a remedy that is unavailable to it. And the majority's analysis on this point is internally inconsistent and potentially confusing.

¶25    The internal inconsistency is in (a) the opinion's assertion (in Part I) that the *Society of Separationists'* neutrality test "does not apply to public monuments," *supra* ¶ 12; and (b) the concession (in Part II) that a religious monument *could* be upheld if in context it would not be perceived as "religious worship, exercise, or

instruction," *supra* ¶¶ 18–21. I agree with the latter concession, as there is good reason to expect that a monument could satisfy constitutional scrutiny under *Society of Separationists* if it were placed in a neutral setting alongside a wide array of other monuments.[1] But the court's ultimate concession in Part II undercuts the earlier conclusion in Part I.

¶26    That gives rise to the potential for confusion in the court's opinion as written. In light of the ultimate concession (in Part II) that the *Society of Separationists* test *could* apply in a manner upholding the use of government funds on a religious monument, the majority's assertions about the inapplicability of the test (in Part I) could mislead litigants and judges in future cases. If read out of context and taken at face value, the court's general statements that *Society of Separationists* "does not apply to monuments" have a significant potential to confuse. *See Supra* ¶ 12

¶27    The majority's response to this problem is the assertion that the discussion in Part I of its opinion concerns only the "second step" of the *Society of Separationists* test (whether the government expenditures in question are "neutral"), and the insistence that the "holding" that that "step" of the test "does not apply to monuments has no bearing on the question of how courts should determine what the message conveyed by a challenged monument is." *Supra* ¶ 20. But that explanation does not solve the problem; it simply highlights the fact that the court's proffered "second" basis for its holding—that the *Society of Separationists* test "does not apply to public monuments," *supra* ¶ 12—is not in fact a separate ground for the court's holding. Step two of the *Society of Separationists* test has no independent significance. If a religiously oriented monument would not qualify as "religious worship, exercise or instruction" as viewed in its real-world context (step one), then it matters not at all whether the government expenditures at issue are neutral (step two).

¶28    For that reason, the majority's concession that a Ten Commandments monument could withstand constitutional scrutiny only underscores the fact that the court is not really proffering a second basis for our holding in this case. We are not "hold[ing] that

---

[1] *See McCreary Cnty., Ky. v. ACLU of Ky.*, 545 U.S. 844, 867–68, 874 (2005) (concluding that constitutionality of Ten Commandments monument depends on context in which it is displayed); *Thomas v. Daughters of Utah Pioneers*, 197 P.2d 477, 488–90 (Utah 1948) (holding that constitutionality of display of Mormon pioneer artifacts in state-funded museum would depend on context).

the neutrality test we adopted in the context of prayers offered during government meetings does not apply to public monuments," *supra* ¶ 12, because we are ultimately concluding that such test *could* apply. And in light of that, there is no "second" basis for rejecting Summum's claim in this case (as of course the fact that the *Society of Separationists* test might falter at the second step of the analysis is irrelevant if the test would be rendered irrelevant at the first step).

¶29    Ultimately, and in any event, the majority's views on the *inapplicability* of the *Society of Separationists* test to cases involving Ten Commandments monuments are not logically a basis for *rejecting* Summum's claim in this case. Such views may provide guidance for lawyers and litigants in future cases, but they do not establish a ground for rejecting Summum's claim in this case.

¶30    *Society of Separationists* establishes an exception to the general rule. The general rule is that "[n]o public money or property shall be appropriated for or applied to any religious worship, exercise or instruction." UTAH CONST. art. I, § 4. Taken literally and to its logical extreme, that could be understood to foreclose *any* use of public funds that would even incidentally benefit religious worship. Yet *Society of Separationists* recognized a limitation on the literal application of article I, section 4. *Soc'y of Separationists, Inc.*, 870 P.2d at 932–34 (rejecting the "absolutist position" advanced by Society of Separationists). It held that "article I, section 4 does not require . . . hostility toward religion," but instead allows public money or property to support religious worship or exercise if it is "provided on a nondiscriminatory basis" and "the public money or property [is] equally accessible to all." *Id*. at 938.

¶31    A conclusion that this neutrality analysis is inapplicable would not be a basis for *dismissing* a plaintiff's claim under article I, section 4. To the extent the court is signaling its skepticism that the *Society of Separationists* test—or even part of it—is inapplicable, that represents a point *in favor* of a plaintiff under article I, section 4. That, ultimately, is what the court appears to be doing—identifying a point of analysis that may favor a plaintiff like Summum in a future case. Because that cannot be a second ground for dismissing Summum's claim in this case, I concur only in paragraphs 1–11 of the majority opinion and disagree with the rest.

———————